```
                     UNITED STATES DISTRICT COURT
                       DISTRICT OF CONNECTICUT


-------------------------------x
EDWARD ZACK,                   :
                               :
             Plaintiff,        :
                               :    Civil Action No.
v.                             :    3:04cv01802(AWT)
                               :
STATE OF CONNECTICUT,          :
                               :
             Defendant.        :
-------------------------------x
```

**ENDORSEMENT ORDER**

**I.   The ADA Claim**

The Complaint (Doc. No. 1) alleges that the defendant retaliated against the plaintiff in violation of the Americans With Disabilities Act, 42 U.S.C. § 12101 et seq. ("ADA"). (Compl. ¶¶ 1, 3, 12.)  However, in the Plaintiff's Opposition to Defendant's Motion to Dismiss ("Plaintiff's Opposition") (Doc. No. 21), the plaintiff concedes that he fails to state a claim under the ADA. (See Plaintiff's Opposition at 1 n.1.)  Therefore, the plaintiff's ADA claim is being dismissed.

**II.  The Title VII Claim**

In the Defendant's Brief in Support of Motion to Dismiss (Doc. No. 11) ("Defendant's Memorandum"), the defendant makes three substantive arguments.

**A.   The Plaintiff's Failure to Apply for Specific Positions**

"[T]he prima facie case under McDonnell Douglas . . . is an evidentiary standard, not a pleading requirement." Swierkiewicz v.

Soreman, 534 U.S. 506, 510-12 (2002).  Thus, the critical question is whether the allegations contained in the Complaint, construed in the light most favorable to the plaintiff, are sufficient to raise an inference of discrimination.  Id. at 510-11.  The precise requirements of a prima facie case "can vary depending on the context and were never intended to be rigid, mechanized, or ritualistic.'"  Id. at 512 (quoting Furnco Construction Corp. v. Waters, 438 U.S. 567, 577 (1978)).  See also McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 n.13 (1973) ("[T]he specification . . . of the prima facie proof required from respondent is not necessarily applicable in every respect to differing fact situations").  Even Brown v. Coach Stores, Inc., 163 F.3d 706 (2d Cir. 1998), which the Supreme Court overturned based on its application of a heightened pleading standard, noted that "the general rule of McDonnell Douglas and Burdine is subject to modification where the facts of a particular case *make an allegation of a specific application a quixotic requirement*."  Brown, 163 F.3d at 710 (emphasis added).

It is noteworthy that even in Brown, on which the defendant relies extensively, the Second Circuit observed that it is not necessary for a plaintiff to allege that he applied for a position because it may be possible to infer discrimination even in the absence of such an application.  This case presents just such a situation.  Here, the plaintiff alleges:

2

> . . . On or about May 17, 2002,[1] in discussions with representatives of the State, the plaintiff resigned his employment and opted to have his name included on what is called the "SEBAC List". The SEBAC List is the result of an agreement between the state and collective bargaining representatives for state employees whereby former State employees have certain rights and preferences for reemployment in vacant positions in State service. Pursuant to SEBAC procedure and process, the plaintiff, whose name was placed on the SEBAC List, was to be advised of and given due consideration for any open positions for which his skills and background made him qualified.

(Compl. ¶ 7.)

> Pursuant to a written agreement entered into by the plaintiff and the State on or about June 24, 1999, the State, in alleged settlement of various other claims by the plaintiff, agreed to place the plaintiff on the list and another rehire list for laid-off employees.

(Compl. ¶ 8.)

> Although the plaintiff's name was placed on these lists, the State has failed and refused to reemploy the plaintiff in State service despite numerous vacancies in State positions for which the plaintiff is well-qualified.

(Compl. ¶ 9.)

> The State engages in a pattern and practice of blackballing and retaliating against employees who have been complainants or litigants in claims and proceedings against the State and its officials. The State identified the plaintiff as one who had made claims against the State and thus targeted him for blackballing and retribution.

(Compl. ¶ 10.)

> While the plaintiff was included on the lists of those eligible for rehire, at least 14 or more vacancies

---

[1] The court notes that there is a typo in ¶ 7 of the Complaint, which alleges that the plaintiff was placed on the SEBAC list on May 17, 200<u>2</u>. In fact, the plaintiff was placed on the SEBAC list on May 17, 2000. (<u>See</u> Notice to Court (Doc. No. 30).)

3

> occurred in the State job positions for which the
> plaintiff was qualified during the period of August 1,
> 2001 to August 1, 2002. Despite plaintiff's
> qualifications, the defendant has in each case denied the
> plaintiff employment in retaliation for his previous
> filings of CHRO and EEOC complaints against the State and
> its agents.

(Compl. ¶ 11.)

As a technical matter, the defendant is correct in asserting that "the plaintiff does not ever allege that the defendant did not provide him with a SEBAC notice of particular openings." (Defendant's Reply Brief to Motion to Dismiss ("Reply Memorandum") at 4.) However, construing the allegations in the Complaint in the light most favorable to the plaintiff, it is reasonable to infer from them that the defendant did not comply with its obligations with respect to rehiring the plaintiff in retaliation for the plaintiff's filings with the CHRO/EEOC.

    **B.   The Time Lapse Between the CHRO/EEOC Filings and the Alleged Retaliation**

The defendant argues that "there is no causal connection between the plaintiff's CHRO/EEOC filings in 1998 and 1999 and the alleged refusals to rehire during the period of August 2001 and August 2002." (Defendant's Memorandum at 8.)

"Causation can be established either indirectly by means of circumstantial evidence, for example, by showing that the protected activity was followed by adverse treatment in employment, or directly by evidence of retaliatory animus." Morris v. Lindau, 196 F.3d 102, 110 (2d Cir. 1999). "The cases

that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be very close." Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2d Cir. 2001) (upholding an award of summary judgment for employer where the employment action was taken 20 months after protected activity).  Likewise, the Second Circuit has held that absent any other evidence of causality, a "two year gap is too wide to support the inference that the [plaintiff] was terminated in retaliation for complaining about discrimination ...." Richardson v. New York State Dept. of Corr. Serv's., 180 F.3d 426, 447 (2d Cir. 1999) (summary judgment awarded to defendant where court refused to infer a causal connection from 2-year gap between protected activity and constructive discharge).  The Second Circuit has recently reiterated the propriety of dismissal "where the complaint shows that the first alleged act of retaliation occurred twenty-one months after plaintiff's protected activity, and where nothing in plaintiff's pleadings, even liberally construed, suggest a plausible scenario of a causal connection between two events occurring so far apart ...." Altieri v. Albany Pub. Library, 2006 WL 266536, slip op. at *2 (2d Cir. 2006). However, this rationale does not necessarily apply to a failure to promote case where "the opportunities for retaliation do not necessarily immediately present themselves." Mandell v. County of

5

Suffolk, 316 F.3d 368, 384 (2d Cir. 2003) (4-year time lapse did not conclusively establish lack of causation where the plaintiff also relied on direct evidence of discrimination).

In the instant case, the plaintiff has sufficiently alleged a causal nexus between his protected activity and the defendant's alleged failure to comply with its obligations with respect to rehiring the plaintiff. First, the plaintiff does not rely solely on the fact that the alleged adverse employment action occurred after he filed the CHRO/EEOC complaints to establish the requisite causal nexus, i.e., "mere temporal proximity." He also alleges that the defendant agreed to place him on the SEBAC list and another rehire list, thereby undertaking an obligation to notify him of any openings and give his candidacy due consideration. The plaintiff's allegation that the defendant agreed to take certain actions with respect to these lists and then failed to do so on 14 separate occasions would constitute further indirect evidence that such failure was a result of discrimination. Second, the court finds instructive the Second Circuit's statement in Mandell that failure to promote cases do not necessarily lend themselves to a temporal proximity analysis because "opportunities for retaliation do not necessarily immediately present themselves." 316 F.3d at 384. The Second Circuit has suggested that where the protected activity and the alleged retaliation occur far apart there need only be a plausible scenario of a causal connection between the two events to survive a motion to dismiss. See Altieri, 2006 WL

6

266536, at *2.  Here, the plaintiff contends that on May 17, 2000 he was placed on the SEBAC list and that positions for which he was qualified became available beginning in August 2001. (Compl. ¶¶ 7, 11.)  Even though the CHRO/EEOC complaints were filed in 1998 and 1999, it is plausible that the defendant's first opportunity to retaliate against the plaintiff did not present itself until August 2001.  The defendant argues that plaintiff has not alleged specific facts upon which it could be determined that its alleged failure to notify the plaintiff of positions in August 2001 was its first opportunity to retaliate against the plaintiff.  However, it is reasonable to draw such an inference from the allegations in the Complaint.

**C.   The Timeliness of Certain Charges in the Complaint**

The plaintiff argues that certain of the alleged adverse employment actions which occurred more than 300 days prior to the filing of the CHRO/EEOC complaint are time barred and cannot serve as the basis for the plaintiff's cause of action.

"Title VII requires filing a charge with the EEOC within 180 days of the alleged unlawful action, 300 days if the charge was first filed with the CHRO."  Searles v. West Hartford Bd. of Educ., 2000 WL 1751302, at *2 (D. Conn. Nov. 27, 2000).  See 42 U.S.C. § 2000(e)-5(e).  The plaintiff's reliance on cases applying the related action doctrine (i.e., the principle that reasonably related acts occurring subsequent to the filing of a CHRO/EEOC

7

complaint may be included in the federal court complaint, see Butts v. City of N.Y. Dept. of Hous. Pres. & Dev., 990 F.2d 1397 (2d Cir. 1993)) is misplaced because the relevant issue is whether certain of the charges in the CHRO/EEOC complaint based on events occurring prior to 300 days before the filing were timely, not whether the plaintiff can add allegations to the complaint in this action that he failed to include in his CHRO/EEOC filing.  Thus, any event that occurred more than 300 days prior to the filing of the CHRO/EEOC complaint cannot serve as the basis for the plaintiff's cause of action, although that does not render them, or actions that occurred after the filing, irrelevant.

Accordingly, the Defendant's Motion to Dismiss (Doc. No. 10) is hereby GRANTED, in part and DENIED, in part.  The motion is being granted with respect to the plaintiff's ADA claim; the motion is being denied with respect to the plaintiff's Title VII claim.

It is so ordered.

Dated this 15th day of March 2006 at Hartford, Connecticut.

/s/
Alvin W. Thompson
United States District Judge